UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

League of Minnesota Cities Insurance Trust, | Case No.
|
                                 Plaintiff, |
|                                            **COMPLAINT**
v. |
|
Wells Fargo Bank, N.A., and |               **Jury Demand**
John Does I-V, |
|
                                Defendants. |

For its Complaint against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and John Does I-V, Plaintiff League of Minnesota Cities Insurance Trust ("LMCIT") alleges as follows:

1.      LMCIT, a public entity, contracted with Wells Fargo to invest certain of its funds in instruments authorized by Minnesota law.  Wells Fargo illegally and fraudulently invested over $2.1 million of LMCIT's public funds in a structured investment vehicle (SIV) issued by a Cayman Islands company and co-issued by a Delaware limited liability company.  This investment violated the statute governing the investment of public funds, and was a breach of Wells Fargo's contractual, fiduciary and statutory duties to LMCIT.  LMCIT seeks to rescind the purchase of the security, or alternatively, to recover damages for the losses it suffered as a result of the unlawful investment.

**THE PARTIES**

2.      LMCIT is a pooled, self-insurance entity, formed as an exercise of the governmental joint powers of its member cities pursuant to Minn. Stat. §§ 471.59,

471.98-.982 and 471.617, to enable member cities to obtain for themselves and for their employees various forms of risk protection.

3.      On information and belief, Defendant Wells Fargo Bank, N.A. is a national bank with offices in Minneapolis and throughout Minnesota.  It merged with Norwest Bank Minnesota, N.A. ("Norwest") in 1998, and is the successor in interest to Norwest with respect to the contracts that are the subject of this action.

4.      John Does I-V were acting as agents and/or employees of Wells Fargo within the course, scope and authority of such relationship and, as a result, are jointly and severally liable for all acts alleged herein.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over LMCIT's federal law claims pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this district because a substantial part of the events underlying LMCIT's claims occurred in this district.

## FACTUAL ALLEGATIONS

### *Statutory Framework Governing LMCIT Investments*

7.      To assure that LMCIT is able to meet its responsibilities to pay cities' defense and provide indemnification for claims, LMCIT is charged with the responsibility of investing the public funds contributed by its member cities in investment instruments authorized by Minn. Stat. § 118A.

8.      Section 118A imposes an extensive and detailed regulatory framework governing public investments.  The statute restricts investment of LMCIT funds to low-risk, marketable, liquid, highly-rated, short-term investments.

9.      Among other things, under Section 118A, LMCIT may invest in "commercial paper issued by United States corporations or their Canadian subsidiaries that is rated in the highest quality category by at least two nationally recognized rating agencies and matures in 270 days or less."  Minn. Stat. § 118A.04, subd. 4.

10.     Any investments of public funds made by LMCIT or its agents that violate the statutory restrictions in Section 118A are *ultra vires* and therefore are void *ab initio* as a matter of law.

***LMCIT's Agreements With Wells Fargo***

11.     On January 4, 1993, LMCIT and Norwest Bank entered into a Custody Agreement in which Norwest Bank agreed to provide custodian services for certain LMCIT securities.  Wells Fargo assumed all of Norwest Bank's obligations under the Custody Agreement.  A copy of the Custody Agreement is attached as Exhibit A.

12.     In or about October of 1993, Norwest Bank proposed securities lending as a new source of revenue for LMCIT and a means to offset custodial fees.  On January 26, 1994, LMCIT and Norwest Bank entered into a Securities Lending Agreement. Wells Fargo assumed all of Norwest Bank's obligations under the Securities Lending Agreement.  A copy of the Securities Lending Agreement is attached as Exhibit B.

13.     In the Securities Lending Agreement, Wells Fargo, as agent for LMCIT, may make LMCIT's securities available to approved borrowers.  The Securities Lending

Agreement requires that each borrower post cash collateral that slightly exceeds the value of the securities.

14.     The Agreement authorizes Wells Fargo to invest that cash collateral subject to the restrictions in Minnesota's public investing laws.  In this regard, the Securities Lending Agreement provides:

> Until given written notice of termination pursuant to Section 14 herein, Participant [LMCIT] hereby authorizes the Bank and Bank agrees to undertake the following:
>
> …
>
> g.     To hold cash Collateral and invest it in the types of investment vehicles that meet the qualifications established in Minnesota Statute § 475.66, subd. 3 including amendments to the subdivision adopted after the date of this Agreement.  If Participant requests that the Bank is further restricted regarding the investment of cash collateral, Participant will add an Exhibit "B" which will be attached hereto and made a part hereof as though fully set forth here.

15.     Minnesota Statute Section 475.66 referenced in the Securities Lending Agreement was repealed in 1996 and replaced by Section 118A; therefore, Section 118A now sets forth the controlling investment restrictions.

16.     LMCIT is authorized to enter into Securities Lending Agreements pursuant to Minn. Stat. § 118A.05, subd. 3, which states that collateral for securities lending transactions must be restricted to the securities described in Section 118A.

17.     Pursuant to the Securities Lending Agreement, Wells Fargo exercised discretionary authority over the investment of LMCIT's cash collateral received in securities lending transactions.

*Wells Fargo's Investment of LMCIT's Public Funds in the Victoria Finance SIV*

18.     In May 2007, Wells Fargo invested over $2.1 million of LMCIT's cash collateral in a so-called "commercial paper note" ("note") issued by Stanfield Victoria Finance Ltd. n/k/a Victoria Finance Ltd. ("Victoria Finance") and co-issued by its wholly-owned subsidiary, Stanfield Victoria Funding, LLC n/k/a Victoria Funding, LLC ("Victoria USA").

19.     Victoria Finance is a limited liability company organized under the laws of the Cayman Islands.  It is not organized as a United States corporation.

20.     Victoria USA is a Delaware limited liability company.  It is not organized as a corporation.

21.     Victoria USA has no employees or operations in the United States or elsewhere.  The Private Placement Memorandum (PPM) describes Victoria USA as follows on page 17:

> Victoria USA will not receive any portion of the proceeds realized from any offering of Senior Debt Securities, will not purchase or hold any Investments (and otherwise will not have significant assets other than its rights under certain Program Documents) and will not engage in any independent business activities.  Victoria USA has agreed to co-issue the Senior Debt Securities solely as an accommodation to the Company and is not to receive any remuneration for so acting.  The Company, in turn, has undertaken to Victoria USA to pay all expenses which Victoria USA may incur in connection with the Senior Debt Securities programs…

A copy of the PPM is attached as Exhibit C.

***The Victoria Finance Structured Investment Vehicle Is Not U.S. Corporate Commercial Paper***

22.     While the Victoria Finance Note was designated as a "commercial paper note," it was *not* commercial paper issued by a United States corporation as authorized by Section 118A.

23.     Corporate commercial paper is a short-term promissory note issued in the open market as an obligation of the corporation.  Typically only corporations with high credit ratings and credit worthiness issue commercial paper, which offers corporations a cheaper, more efficient alternative to a bank line of credit.  Proceeds from the issuance of corporate commercial paper are used for a corporation's current business operations, for example, finance inventories, accounts receivables and payrolls,or for day-to-day cash management.

24.     The Victoria Finance Note is an asset-backed security.  It is known as a structured investment vehicle (SIV).

25.     Victoria Finance is an off-shore entity commonly referred to as a Special Purpose Entity ("SPE") or Special Purpose Vehicle ("SPV").

26.     SPEs/SPVs like Victoria Finance generally invest in portfolios of medium and long-term debt securities, and fund the purchase of those assets by issuing short-term and medium-term notes, and one or more classes of subordinated notes.

27.     SIVs like Victoria Finance are formed to profit on the spread between the yield on the SIV's investment portfolio and its cost of funds, that is, to engage in interest rate arbitrage.

28.     The Victoria Finance PPM confirms that Victoria Finance was formed for the purpose of acquiring a portfolio of bonds, notes and other debt securities, and issuing its own debt securities.

***An Enforcement Event Occurs When the Victoria Finance Security is Downgraded***

29.     Pursuant to Victoria Finance guidelines, within 10 days of the occurrence of one or more so-called "enforcement events," an "Enforcement Manager" must be appointed by the Collateral Agent to supervise the valuation and liquidation of the Victoria Finance investment portfolio.   One such "enforcement event" is a ratings downgrade.

30.     The Collateral Agent sent out various notices to Wells Fargo and other senior debt holders (but not LMCIT) beginning at least as early as mid-December 2007.

31.     A December 12, 2007 notice stated that a number of investors were concerned that an immediate liquidation of Victoria Finance's portfolio of assets upon an enforcement event in the current market environment would not maximize recovery for senior debt holders, and presented senior debt holders with various options, among them (i) to have the existing liquidation procedures continue to apply, with the electing shareholders to receive proceeds from the sale of a pro rata share of the portfolio; and (ii) to become subject to alternative liquidation procedures by way of a restructuring/work-out.

32.     The December 12 notice set an election deadline of December 21, 2007. That deadline was extended to December 28, 2007, and then to January 4, 2008, and then to January 17, 2008, according to various additional notices.

33.     On January 4, 2008, almost a month after Wells Fargo received the first notice, LMCIT received a letter from Robert G. Smith, Senior Managing Director of Wells Fargo Securities Lending, advising that on December 21, 2007, Moody's had downgraded the senior debt ratings of all commercial paper notes issued by Victoria Finance due primarily to the deterioration of the market value of the asset portfolio held by Victoria Finance.  He noted that an enforcement event had been suspended, but would possibly occur on January 8.  He further noted that the pool in which LMCIT is invested (along with four other public entities) holds $15 million (face value) of one issue of Victoria Finance with a February 15, 2008 maturity date.  The letter closed by stating that Wells Fargo would "communicate additional developments as we learn of them."  The letter never mentioned that LMCIT had the option of liquidating the security.

34.     Over the next week, LMCIT sought assurances that the Victoria Finance investment met the statutory requirements set forth in Section 118A.  LMCIT wrote to Wells Fargo on January 7, 2008, requesting confirmation that the Victoria Finance "commercial paper" was (1) rated in the highest rating category by at least two nationally-recognized rating agencies and (2) was issued by a United States corporation or one of its Canadian subsidiaries.

35.     Wells Fargo's initial January 8, 2008 response was to reassure LMCIT that the "commercial paper" was rated AAA by both S&P and Moody's at the time of purchase, and that the short-term ratings were A1+/P1.

36.     LMCIT followed up again when Wells Fargo failed to address whether Victoria Finance is a U.S. corporation.   Wells Fargo's response was to forward a

Bloomberg "screenshot" for the Note, which Wells Fargo wrote "shows this to be a U.S. Interest bearing Commercial paper."

37.     LMCIT sought further clarification given indications in the media that Victoria Finance is a Cayman Islands company.

38.     Wells Fargo responded by forwarding the Victoria Finance PPM and explaining:  "Victoria and most ABCP [Asset Backed Commercial Paper] programs issue out of a Delaware LLC, so technically it is a Cayman Islands based company issuing U.S. CP out of a Delaware based subsidiary."

39.     The Victoria Finance PPM was explicit that the Victoria Finance commercial paper was issued by a Cayman Islands company, and co-issued by a Delaware LLC—not by a United States corporation.

40.     On or about January 11, 2008, LMCIT requested that Wells Fargo buy back LMCIT's Victoria Finance Note.  Wells Fargo rejected LMCIT's request that it buy back the Note.

41.     LMCIT directed Wells Fargo not to invest in any more commercial paper unless it was issued by a U.S.-domiciled corporation.  LMCIT also requested that Wells Fargo keep it apprised of developments in the Victoria Finance matter as they occurred.

42.     Wells Fargo did not keep LMCIT apprised of developments as they occurred, despite LMCIT's request and Wells Fargo's January 4, 2008 written assurance that it would do so.

43.     Throughout LMCIT's conversations with Wells Fargo up until January 15, 2008, Wells Fargo never mentioned the note holders were given the option of liquidating the investment.  On January 15, LMCIT learned in the media—not from Wells Fargo— that there was a January 17, 2008 deadline for investors to elect whether to liquidate their share of the asset portfolio.   When LMCIT contacted Wells Fargo about its options, Wells Fargo advised that it had already made the election not to liquidate.

44.     Meanwhile, an enforcement event with respect to the Victoria Finance commercial paper occurred on January 8, 2007 arising, *inter alia*, from the Moody's rating on the security falling below A-1/P-1.

45.     LMCIT was not repaid its more than $2.1 million investment or interest on the maturity date, February 15, 2008.

46.      The market price for the Victoria Finance assets (to the extent there is a market) is insufficient to pay off senior creditors.  A potential restructuring is underway, with pass-through notes to be issued by a Cayman Islands company.  It is unknown when or how much LMCIT will recover on the Victoria Finance investment.

***Wells Fargo Refuses to Rescind the Illegal Victoria Finance Investment***

47.     On March 19, 2008, LMCIT made a formal demand for rescission of the Victoria Finance transaction.

48.     On April 15, 2008, Wells Fargo rejected LMCIT's rescission demand.

**COUNT 1**
**Section 10(b) of the 1934 Securities Exchange Act, Rule 10b-5 and**
**Minn. Stat. § 80A Fraud - Suitability**
**(Direct Liability—Wells Fargo and Does I-V)**

49.     LMCIT hereby incorporates and realleges the allegations set forth above.

50.     The Victoria Finance security was an unlawful investment under Minn. Stat. § 118A and was otherwise an unsuitable investment of LMCIT's public funds.

51.     Defendants purchased the securities with an intent to defraud or with reckless disregard for LMCIT's interests.

52.     Defendants failed to exercise their expertise and capabilities to evaluate the Victoria Finance investment to determine the lawfulness of the Victoria Finance security under Minn. Stat. § 118A, or its suitability generally, as required by NASD Rule 2310 and IM-2310-3.

53.     By the conduct, practices and activities described in this Complaint, Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)), Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 and Minn. Stat. § 80A.01 *et seq*.

54.     Accordingly, LMCIT is entitled to recover the consideration paid for the Victoria Finance security plus interest, and LMCIT has tendered and hereby again tenders the Victoria Finance security, in exchange for the return of its investment plus interest from the date of the investment.

55.     Alternatively, LMCIT is entitled to recover its damages.

56.     Moreover, LMCIT is entitled to recover its attorneys' fees and costs.

11

**COUNT 2**
**Section 10(b) of the 1934 Securities Exchange Act, Rule 10b-5 and**
**Minn. Stat. § 80A Fraud and Misrepresentation**
**(Direct Liability/Wells Fargo and Does I-V)**

57.    LMCIT hereby incorporates and realleges the allegations set forth above.

58.    Defendants, directly or indirectly, by use of the means or instruments of interstate commerce or of the mails or of the facility of a national securities exchange, in connection with the purchase or sale of securities, with knowledge or recklessness: (a) employed devices or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon LMCIT.

59.    Defendants either (a) knew the Victoria Finance security was an unlawful investment for LMCIT, proceeded to make the investment and willfully omitted to so advise LMCIT, or (b) were reckless in failing to know the illegal nature of the Victoria Finance investment.

60.    Among other things, Defendants failed to disclose that, contrary to Minn. Stat. 118A.04, they were investing in commercial paper notes issued by a Cayman Islands company and a Delaware LLC, and failed to disclose the inherent risks associated with SIVs like Victoria Finance Notes—risks detailed in the Victoria Finance PPM.

61.    By the conduct, practices and activities described in this Complaint, Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)), Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 and Minn. Stat. § 80A.01 *et seq.*

12

62.     Accordingly, LMCIT is entitled to recover the consideration paid for the Victoria Finance security, and LMCIT has tendered and hereby again tenders the Victoria Finance security, in exchange for the return of its investment, plus interest from the date of the investment.

63.     Alternatively, LMCIT is entitled to recover damages.

64.     Moreover, LMCIT is entitled to recover its attorneys' fees and costs.

## COUNT 3
### Controlling Person Liability and Respondeat Superior
### (Wells Fargo)

65.     LMCIT hereby incorporates and realleges the allegations set forth above.

66.     Wells Fargo is liable as a "control person" and under the common law theory of respondeat superior for the violations of Does I-V for directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, or of the facility of a national securities exchange, in connection with the purchase or sale of securities, with knowledge or recklessness: (a) employed devices or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not mis-leading or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon LMCIT.

67.     Wells Fargo also is liable as a control person because it controlled Does I-V and had the ability to control or in fact controlled the Victoria Finance transaction at issue.

68.     By the conduct, practices and activities described in this Complaint, Wells Fargo is liable for the primary violations of Does I-V due to its position as a control person pursuant to Section 20(a) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 and Minn. Stat. § 80A.01 *et seq*.

## COUNT 4
### Respondeat Superior
### (Wells Fargo)

69.     LMCIT hereby incorporates and realleges the allegations set forth above.

70.     Wells Fargo is vicariously liable for the acts and omissions of Does I-V because Does I-V were acting within the work-related limits of their duties as to both time and place, and because the conduct of Does I-V was reasonably foreseeable given the nature of their employment and duties.

71.     Wells Fargo is vicariously liable for Does I-V's primary violation pursuant to Minnesota common law of respondeat superior.

## COUNT 5
### Failure to Supervise
### (Wells Fargo)

72.     LMCIT hereby incorporates and realleges the allegations set forth above.

73.     Wells Fargo violated NASD Rule 3010 and other applicable securities laws, regulations and the NASD Rules, by failing to supervise Does I-V in a manner that would ensure that LMCIT's investments are consistent with its investment objectives and the statutory restrictions set forth in Minn. Stat. § 118A.

74.     LMCIT thereby suffered damages, in an amount to be proven at trial.

## COUNT 6
## Breach of Contract
## (Wells Fargo)

75.     LMCIT hereby incorporates and realleges the allegations set forth above.

76.     By the conduct, practices and activities described in this Complaint, includ-

ing violating the investment restrictions imposed on LMCIT pursuant to Minn. Stat.

§ 118A, Wells Fargo breached the Securities Lending Agreement, and thereby damaged

LMCIT.

77.     Wells Fargo's breach was material, and LMCIT is therefore entitled to res-

cind the Victoria Finance transaction.  LMCIT has tendered and hereby again tenders the

Victoria Finance security as part of a full rescission of the transaction, in exchange for

return of its more than $2.1 million, plus interest from the date of the investment.

78.     Alternatively, LMCIT is entitled to recover its damages.

## Count 7
## Breach of Fiduciary Duty—Common Law and Minn. Stat. § 45.026
## (Wells Fargo and Does I-V)

79.     LMCIT hereby incorporates and realleges the allegations set forth above.

80.     LMCIT reposed its trust and confidence in Defendants by virtue of their

superior knowledge, and Defendants had possession of and control over LMCIT's cash

collateral.  Defendants owed LMCIT a duty to invest LMCIT's public funds in accor-

dance with the fiduciary standards of care, skill and judgment generally applicable to the

investment of such public funds.

81.     Defendants' investment of LMCIT funds in the Victoria Finance Note did

not satisfy fiduciary standards of care, skill and judgment.

82.     Defendants breached their fiduciary duties to LMCIT by purchasing the Victoria Finance Note without undertaking adequate due diligence to determine the nature of the security and whether it met LMCIT's investment objectives or violated the restrictions set forth in Minn. Stat. § 118A.

83.     As a result of Defendants' breach of fiduciary duty, LMCIT has suffered the loss of use of its public funds and may suffer the permanent loss of those funds.

84.     LMCIT has tendered and hereby again tenders the Victoria Finance security as part of a full rescission of the transaction, in exchange for return of its more than $2.1 million, plus interest from the date of the investment.

85.     Alternatively, LMCIT is entitled to recover its damages.

**COUNT 8**
**Doctrine of Ultra Vires—Rescission of Contract**
**(Wells Fargo and Does I-V)**

86.     LMCIT hereby incorporates and realleges the allegations set forth above.

87.     Wells Fargo's purchase of the Victoria Finance Note was unlawful and *ultra vires*.

88.     By reason of the foregoing, LMCIT is entitled to rescission of the Victoria Finance transaction.

89.     LMCIT has tendered and hereby again tenders the Victoria Finance Note as part of a full rescission of the transaction, in exchange for return of its more than $2.1 million, plus interest from the date of the investment.

**COUNT 9**
**Common Law Fraud**
**(Wells Fargo and Does I-V)**

90.     LMCIT hereby incorporates and realleges the allegations set forth above.

91.     The conduct, practices and activities described in this Complaint constitute common law fraud.  LMCIT justifiably relied on Defendants.

92.     LMCIT suffered damages as a result of Defendants' fraud, in an amount to be proven at trial.

**COUNT 10**
**Negligent Misrepresentation**
**(Wells Fargo and Does I-V)**

93.     LMCIT hereby incorporates and realleges the allegations set forth above.

94.     The conduct, practices and activities of Defendants described in this Complaint constitute negligent misrepresentation.   LMCIT justifiably relied on Defendants.

95.     LMCIT suffered damages as a result of Defendants' negligent misrepresentation, in an amount to be proven at trial.

**COUNT 11**
**Negligence**
**(Wells Fargo And Does I-V)**

96.     LMCIT hereby incorporates and realleges the allegations set forth above.

97.     At all times relevant to this Complaint, Defendants owed LMCIT a duty to exercise reasonable care, skill and diligence.

98.     By the conduct, practices and activities described in this Complaint, Defendants failed to exercise reasonable care, skill and diligence in identifying lawful

17

and suitable investments for LMCIT, and were negligent in investing LMCIT's public funds in an unlawful and unsuitable investment.

99.    LMCIT thereby suffered damages, in an amount to be proven at trial.

### COUNT 12
### Indemnification—Attorneys' Fees
### (Wells Fargo)

100.    LMCIT hereby incorporates and realleges the allegations set forth above.

101.    In the Securities Lending Agreement, Wells Fargo promised to "indemnify and save and hold [LMCIT] harmless from any and all claims or causes of action caused by the negligence, bad faith, or misconduct of the Bank or the Bank's agents or employees in the performance of this Agreement."

102.    This obligation is not limited by its terms to claims or causes of action asserted by third parties and, in fact, extends to claims asserted by LMCIT.

103.    Accordingly, LMCIT is entitled to be indemnified by Wells Fargo for all of its attorneys' fees and costs in connection with the conduct, practices and activities described in this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, LMCIT prays for judgment in its favor and against Defendants, jointly and severally, as follows:

A.    Rescinding the Victoria Finance transaction and ordering return of LMCIT's investment funds in an amount of over $2.1 million, plus interest from the date of purchase of the Victoria Finance security to the present at the Minnesota statutory rate; or alternatively,

B.      Awarding a money judgment in favor of Plaintiff, and against Defendants, in an amount to be determined at trial;

C.      Awarding LMCIT costs and attorneys' fees; and

D.      Granting any relief the Court deems just and proper under the circumstances of the case.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, LMCIT demands a trial by jury of all issues triable of right by a jury.

Dated:  September 10, 2008                    **GREENE ESPEL, P.L.L.P.**

 s/ Jeanette M. Bazis
Clifford M. Greene, Reg. No. 37436
Jeanette M. Bazis, Reg. No. 255646
200 S. Sixth Street, Suite 1200
Minneapolis, MN  55402
cgreene@greeneespel.com
jbazis@greeneespel.com
(612) 373-0830

Attorneys for Plaintiff League of Minnesota
Insurance Trust