# CUSTODY AGREEMENT

**THIS CUSTODY AGREEMENT** is made by and between the League of Minnesota Cities Insurance Trust (herein Owner) and Norwest Bank Minnesota, National Association, (herein Custodian), on the 4th day of January, 1993.

**WHEREAS,** the Owner desires to engage the services of the Custodian to act on its behalf in providing custodial services for certain assets under the Owner's management or the management of its duly appointed investment adviser, Voyageur Asset Management.

**WHEREAS,** the Custodian is willing to act as Owner's custodian to provide these services for the Owner.

**NOW, THEREFORE,** the parties hereto agree as follows:

1. **Services to be Provided by Custodian. The Custodian shall:**

    a. Open and maintain a custody account(s) in the name of the Owner and uphold in such an account(s) all cash and securities initially deposited plus any additional cash and securities that may be received form time to time for the account.

    b. Act upon written direction from the Owner or from one or more investment advisers duly appointed in writing by the Owner. Such appointment shall be evidenced by a duly executed investment adviser agreement.

    c. Settle securities transactions for the account with brokers or others in accordance with the Owner's and or duly appointed investment advisers written direction.

    d. Issue advices to Owner and or duly appointed investment advisers setting forth particulars of purchases, sales receipts, deliveries and principal collection.

    e. Be responsible for the collection of all investment income relating to the asset in the account.

    f. Present for payment all maturing securities or any securities called for redemption and collect proceeds therefrom.

    g. Deliver cash or securities in such manner as the Owner or its investment advisers may direct in writing.

    h. Deliver proxy materials for securities held in the account as the Owner or its investment advisers may direct in writing.

**EXHIBIT A**

2. **Powers of the Custodian.** The Custodian is authorized and empowered to:

   a. Hold assets in the nominee selected by the Custodian.

   b. Employ agents other than persons on its regular payroll and delegate to them such ministerial and other non discretionary duties as it sees fit and to rely upon such information furnished by such agents.

   c. make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any other instruments that may be necessary or appropriate to carry out the custodianship duties and powers.

3. **Reports.** Custodian shall furnish by the 10th business day of each month to the Owner and the duly appointed investment advisers a monthly statement of account reflecting an inventory of assets in the account, all activity during the previous month, and a market value for the assets of the account. Additionally, Custodian will furnish to the Owner a monthly Investment Portfolio Report which reflects accrual, accretion, and amortization. The Custodian will furnish such other reports as the Owner may reasonably request, including reports to the Owner's accountants or other examiners as may be necessary.

4. **Fees.** Custodian shall receive compensation as set forth in Schedule A attached to this Agreement as amended from time to time by the parties. Custodian shall also be reimbursed by the Owner for its usual out-of-pocket expenses during the reasonable performance of the Custodian's duties herein. All such compensation may be deducted from the account.

5. **Authorized Persons.** The Owner and each duly appointed investment adviser shall furnish a list to the Custodian (and from time to time whenever there are changes therein) of transmitting instructions to the Custodian concerning the assets in the account. The Custodian shall be entitled to rely on the oral advice as confirmed in writing or written advice of such persons. The Custodian shall treat as genuine and may rely on any notice or communication without further verification, that it believes is from the proper party and shall be protected in doing so by the Owner.

6. **Amendment and Termination.** This Agreement may be amended by written agreement of the parties at any time. This Agreement shall continue in effect unless or until terminated by either party upon 30 days written notice to the other party. Upon termination, all securities held in the account shall be delivered promptly by the Custodian to the Owner or in accordance with the Owner's written instruction. Any fees remaining outstanding and balances owing to the Custodian may be withheld from the assets delivered to the Owner or under the Owner's direction. In the event Customer's role under this contract is terminated by either party, Custodian shall assist and cooperate with Owner in the smooth and orderly transition to a succeeding custodian.

7. **Indemnification.** Owner hereby agrees to indemnify and hold Custodian harmless from and against any and all claims, liabilities and expenses (including attorney's fees), which

Custodian may incur by reason of its acting as Custodian under this Agreement. Notwithstanding the foregoing, it is specifically understood and agreed that in the event Custodian has committed negligence, malfeasance, misfeasance or other wrongful act in the exercise of its responsibilities hereunder, the indemnification and hold-harmless provisions of this Agreement shall not apply. Similarly, this section shall not limit Custodian liability to Owner with respect to any breaches by it of this agreement.

8. **Notices.** Notices to the Owner shall be directed and mailed as follows:

   League of Minnesota Cities
   Attn: Dave DuBord, Controller
   3490 Lexington Avenue North
   Shoreview, MN 55126

   Notices to the Custodian shall be directed and mailed as follows:

   Norwest Bank Minnesota, N.A.
   Norwest Center
   Corporate Custody Services, 9th Floor
   Sixth Street and Marquette Avenue
   Minneapolis, MN 55479-0065

9. **Inspection Privileges.** The books, records, documents, accounting procedures and practices of the Custodian relevant to this Agreement are subject to examination by the Owner.

10. **Governing Law.** This Agreement and all transactions hereunder shall be governed by, interpreted, and construed and enforced in accordance with the laws of the State of Minnesota.

11. **Effective Date.** This Agreement shall be effective January 6, 1993.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first written above.

*OWNER*
**League of Minnesota Cities Insurance Trust**
By: _[signature]_
Its Authorized Officer: Trustee

*CUSTODIAN*
**Norwest Bank Minnesota, National Association**
By: _[signature]_
Its Authorized Officer: Assistant Vice President

| Schedule A | Custody Fee Schedule<br>League of Minnesota Cities | |
|---|---|---|

| | |
|---|---:|
| **Annual Account Maintenance** | $5,600.00 |

**Annual Safekeeping Charges**

| | |
|---|---:|
| Fed/DTC securities - per stock or bond issue<br>(and including Prime Value Money Market Funds) | 30.00 |
| N.Y. Physical CP securities - per stock or bond issue | 45.00 |
| Global securities - 12 basis points of account market value | .12% |

(All safekeeping charges are applied on a per account basis)

**Transaction Charges**

    **Standard Transactions**
    (Those book entry transactions that Norwest receives
    complete detailed, instructions for by trade date +3)

| | |
|---|---:|
| DTC | 10.00 |
| Federal Reserve | 10.00 |
| Principal Paydown (fixed rate issues) | 10.00 |
| Checks/Wires | 10.00 |
| Demand Deposit Account | 5.00 |
| Physical New York/PTC/Mpls | 25.00 |
| DTC Same Day Funds Settlement | 20.00 |
| Repurchase Agreement | 25.00 |

    **Non-standard Transactions**
    (Including transactions where instructions are received after trade
    date +3 or instructions are incomplete; or same day turnarounds.)

| | |
|---|---:|
| DTC | 45.00 |
| Federal Reserve | 25.00 |
| Physical New York/PTC/Mpls | 40.00 |
| Mutual Fund | 30.00 |
| Global | 180.00 |
| Option (including resetting variable rate municipals) | 20.00 |
| Futures | 20.00 |
| Interest or Principal Paydown *(variable rate issues)* | 25.00 |

All transaction (purchase, sale, maturity, call, deposit, withdrawal, expiration, wire transfer, check) charges are applied on a per account, per trade basis.

**Annual Reporting Charges**

| | |
|---|---|
| Standard Settlement Date Reporting Package | No Charge |
| Master Trust Full Accrual Trade Date Accounting: | |
| Per Custody Account for Accounting Statements | 2,500.00 |
| Per Consolidated Statement | 1,500.00 |
| Per Custody Account for Performance Measurement Reports | 1,500.00 |
| File Download/Transfer | Based on Frequency/Method |
| Dial Up Reporting (Norwest ACCESS) | 3,600.00 |

**Out-of-Pocket Charges**

Unusually large out-of-pocket expense (postage, shipping, Brinks, and other customary items) will be billed to the client.

**Extraordinary Services**

Fees will be charged for extraordinary services requested or required of Norwest. These fees will be agreed upon between the League of Minnesota Cities and Norwest before starting the project. If any transaction occurs which is not covered by this fee schedule, we reserve the right to charge you at a rate commensurate to the transaction.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

All fee schedules are effective for one year after the date of acceptance of the custody agreement and negotiable anytime thereafter.