# EXHIBIT B

SECURITIES LENDING AGREEMENT

CUSTOMER AGREEMENT

This Agreement, made as of the 26th day of January, 19___, by and between Norwest Bank Minnesota, National Association, (herein the Bank) and the League of Minnesota Cities Insurance Trust, (herein Participant).

WITNESSETH:

WHEREAS, the Bank has established a Securities Lending Program which permits its government jurisdiction clients to loan securities;

WHEREAS, the Participant is a governmental unit located within the State of Minnesota and is authorized by Minnesota Statutes sections 475.76 and 475.79 to enter into agreements to loan securities; and,

WHEREAS, the Participant and the Bank entered into a "Custody Agreement" dated January 4, 1993, for the provision of custodial services for certain securities under the Participants management or the management of its duly appointed investment advisor; and,

WHEREAS under the Securities Lending Program, the Bank, as Agent for the Participant, will make available to approved borrowers use of the Participant's securities; and

WHEREAS, the Bank has other Participants in the Securities Lending Program and the Securities Lending Program is designed to allocate securities loans equitably among the Participants;

NOW THEREFORE, In consideration of the mutual promises, covenants and undertakings set forth herein, the parties hereto agree as follows:

1. Definitions. For purposes hereof:

a. "Loaned Securities" shall be those securities which are loaned to the Borrower(s) by Bank from Participant's Account.

b. "Borrower(s)" shall be only those organizations who meet the qualifications established in Minnesota Statute §475.66, subd. 1, including amendments to the subdivision adopted after the date of this Agreement, and with which the Bank has established a Borrower Securities Loan Agreement under which the Borrower(s) may borrow securities loaned by the Bank on

1

behalf of the Participant. The Borrower(s) which the Bank has approved, as of the date of this Agreement, are listed in Exhibit A, which is attached to and incorporated in this Agreement.

c. "Collateral" shall be collateral which Bank shall receive from Borrower(s) to secure Loans on behalf of Participant in the form of (i) cash, or (ii) securities which meet the qualifications established in Minnesota Statute §471.56 and §475.66, including any amendments to the sections adopted after the date of this Agreement.

d. "Mark to Market" shall be the procedure whereby Bank determines market value of securities, collateral and loaned securities to Borrowers based upon final publicly quoted prices as of the close of business daily. The Bank shall use a pricing service to obtain market valuation; or such other reasonable valuation method as is agreed upon between Bank, Borrower(s), and the Participant. The face value of cash collateral shall be deemed to be its market value.

2. <u>Appointment</u>  Participant has appointed Bank under a Custody Agreement as custodian of certain assets (herein "Account"). In furtherance of the Custody Agreement Participant hereby appoints Bank as Agent for the purpose of lending securities from Participant's Account under the Bank's Securities Lending Program.

3. <u>Agent's Activities</u>  Until given written notice of termination pursuant to Section 14 herein, Participant hereby authorizes Bank and Bank agrees to undertake the following:

   a. To enter into a Borrower Securities Loan Agreement with each Borrower setting forth the general terms governing loans made under the Securities Loan Program. Those Borrower(s) which Bank has approved and qualify as to Section 1.b., as of the date of this Agreement, are listed in Exhibit "A" attached hereto and made a part hereof as though fully set forth herein. Such list of approved Borrower(s) may be changed from time to time upon written notice to Participant from Bank. Participant may direct Bank not to enter into securities lending with any particular Borrower(s) as Participant specifies by written notice to Bank. In no event will the Bank approve a Borrower that does not meet the qualifications of Minnesota Statutes, §475.66, subd. 1 and §475.76.

   b. To negotiate fees and rebates with Borrower(s) in connection with securities lending.

   c. To deliver to Borrower(s), from time to time, such securities held in Participant's Account as Bank may in its

2

discretion select for securities lending, and, for each loan, to obtain on the Participant's behalf the confirmation required by Minnesota Statute §475.76, subd. 3, including any amendments to the subdivision adopted after the date of this Agreement.

    d.    To obtain written approval of the Participant <u>before</u> using the custodial or securities lending services of other financial institutions as agents of Bank, for the benefit of Participant.

    e.    In connection with each Loan, to receive, no later than the close of business on the date the securities are loaned, from Borrower, Collateral of a value of at least equal to one-hundred two percent of the Market Value of the Loaned Securities and accrued interest if any. Such Collateral shall be held as security for the due and punctual performance by Borrower of any and all of the Borrower's obligations under Borrower's Security Loan Agreement between the Borrower and the Bank.

    f.    To hold Participant's Collateral with other securities ending collateral held by Bank, however, Participant's specific interest therein shall at all times be noted in the records of Bank.

    g.    To hold cash Collateral and invest it in the types of investment vehicles that meet the qualifications established in Minnesota Statute §475.66, subd. 3 including amendments to the subdivision adopted after the date of this Agreement. If Participant requests that Bank is further restricted regarding the investment of cash collateral, Participant will add an Exhibit "B" which will be attached hereto and made a part hereof as though fully set forth herein.

    h.    Upon termination of any Loan, transactions will be handled according to the Borrower's Securities Loan Agreement and in conjunction with this Securities Lending Agreement.

    i.    To receive from Borrower amounts equal to all interest payments with respect to the Loaned Securities and to dispose of such payments pursuant to the Custody Agreement.

    j.    To originate or terminate any Loan at any time as Bank may in its sole discretion determine, without prior notice to Participant.

4.    <u>Mark to Market</u>. Bank shall on a daily basis (a) Mark to Market Loaned Securities and Collateral, and (b) demand additional Collateral from Borrower or, on demand, release excess Collateral to Borrower whenever either action is required pursuant to the securities borrowing agreement with

3

Borrower. Bank shall ensure that Borrower maintains Collateral for Loaned Securities equal to at least (100%) of the Market Value of the Loaned Securities plus any accrued interest.

5. <u>Recordkeeping and Reporting</u>. The Bank will keep security loan records separate from a Participant's custodial or fiduciary portfolio records. Accrued but undistributed income shall continue to be invested as provided in this agreement, as appropriate, until distributed to Participant. Income for each loan will be credited to a Participant's Account monthly. No later than the 10th working day of the month following the prior month end, income from all loans will be credited to a Participant's Custody Account.

Further, by the 10th working day of the month, Bank shall send to Participant a detailed report which shall include all loan activity, Borrowers to whom loans were made and income earned.

The books, records, documents and accounting practices and procedures of Bank relevant to this Agreement shall be subject to examination by the Participant's auditors and the Minnesota State Auditor or other government auditors requested by Participant upon reasonable notice to Bank or as required by state or federal law as appropriate.

6. <u>Loan Termination by Participant</u>.

    a. Unless otherwise agreed, Participant may at any time, and in its sole discretion, elect to terminate a Loan upon notice to Bank. Upon receipt of such notice, Bank shall notify the appropriate Borrower(s) for return of the Loaned Securities as provided in Bank's Securities Loan Agreement with Borrower.

    b. Participant shall immediately notify Bank of intention to sell a security which is in the Custody Account. Such notice for securities issued or guaranteed by the United States government or it agencies shall in no event be given later than 24 hours prior to the contractual settlement date and five business days for all other types of securites. Bank shall not be liable to Participant for fails occurring at settlement of such a sale if timely notice is not given by Participant as required by this Section.

    c. Bank shall be deemed to have received appropriate notice as required by this Section upon receipt of written or oral directions signed or given by any person whose name and signature is listed on the most recent certificate delivered by Participant to Bank which lists those persons authorized to give directions in the name and on behalf of Participant. Appropriate notice as required by this section shall include notice sent to Bank by letter, memorandum, telecopy facsimile,

4

video (CRT) terminal or other "on-line" system or given orally over the telephone or in person.

7.  Fees.

a.  Income from the Securities Lending Program is generated by fees paid by the Borrowers and income from investment of cash collateral. All cash collateral is pooled for investment purposes. In acting as Agent for the Participant, Bank will receive 40% on the earnings from each loan and the Participant will receive 60%. The fees will be calculated monthly and the Bank's fee will be withheld from the remittance to the Participant or the Custody Account.

b.  It is further understood that all custody fees as contemplated in paragraph 4 of the Custody Agreement and as calculated in accordance with Schedule A to the agreement including "Out-of-Pocket Charges" and fees for "Extraordinary Services" are hereby waived by Bank upon the Participant's total participation in the Bank's securities lending program.

8.  Participant Representations and Warranties. Participant represents and warrants that: (i) Participant has the legal right, power and authority to execute, deliver and perform this Agreement and to carry out all of the transactions contemplated hereby; (ii) the execution and delivery of this Agreement by Participant will not violate any Minnesota Statute, regulation, charter or bylaw by which Participant is bound; (iii) Participant has obtained all necessary authorization, including the consents and approvals of their respective governing body; and (iv) the execution, deliver and performance of this Agreement and the carrying out of any of the transactions contemplated hereby will not under any agreement or other instrument to which Participant is a party or which is otherwise known to Participant.

9.  Bank Representations and Warranties. Bank's duties and responsibilities shall only be those expressly set forth in this Agreement, in the Custody Agreement, and in the Borrowers Securities Loan Agreement. Bank shall not be liable for any loss or liability arising from Bank's performance of its duties under this Agreement, except for loss or liability arising from Bank's malfeasance or negligence in performance of its duties under this Agreement.

Bank agrees to indemnify and save and hold the Participant, the Participant's agents, and the Participant's employees harmless from any and all claims or causes of action caused by the negligence, bad faith, or misconduct of the Bank or the Bank's agents or employees in the performance of this Agreement. This clause shall not be construed to bar any legal remedies the

5

Bank may have for the Participant's failure to perform its obligations pursuant to this Agreement.

10. <u>Indemnification</u>. Participant will not indemnify the Bank for any claim brought against it by any Borrower or third party nor is the Participant responsible for attorney fees or costs incurred by Bank. This clause shall not be construed to bar any cause of action Bank may have against Participant resulting from or arising out of any breach of any representation or any other failure of Participant to comply with the terms of this Agreement in accordance with applicable Minnesota State Statutes regarding municipal liability.

11. <u>Failure by Borrower to Return Loaned Securities</u>. If any Borrower fails to return loaned securities, the Participant, at its option, may (a) direct the Bank to deliver to the Participant the Collateral held for the loaned securities up to the Market Value of the loaned securities and any accrued interest on the Collateral; (b) direct the Bank to use its best efforts to purchase replacement securities or proceeds of the Collateral to pay for the purchase; or (c) direct the Bank to hold the Collateral and take action to limit the Participant's loss on behalf of the Participant, including action to pursue the Borrower for the return of the loaned securities.

In the absence of direction from the Participant, the Bank shall take such action, including any of the above options, which the Bank in its sole discretion shall deem to be appropriate to limit the Participant's loss from the Borrower's failure to return the loaned securities. In any event, the Participant may direct the Bank to take legal or other action against the Borrower on behalf of the Participant to recover any losses incurred by the Participant as a result of the Borrower's failure to return the loaned securities; if so directed, the Bank agrees to undertake such action. The Participant agrees that any excess Collateral shall be returned by the Bank for any costs which exceed the Collateral. Notwithstanding the terms of this article, the Bank shall not be required to act inconsistently with any court or government agency order regarding the Collateral.

12. <u>Agreements Modification</u>. This Agreement, together with the Exhibits hereto contains a complete statement of the parties with respect to its subject matter, supersedes all existing agreements between them concerning the subject and may not be amended or modified in any manner except by a written agreement executed by the parties hereto.

13. <u>Notice</u>. Any notice required to be given in writing under this Agreement shall be delivered by hand or mailed by registered mail, postage prepaid to:

6