# SECURITIES LENDING AGREEMENT

*Wells Fargo Bank Minnesota, National Association*
AS AGENT

*And*

*Minnesota Counties Insurance Trust( MCIT)*
AS PARTICIPANT

This Agreement, made as of the 13th day of February, 2004, by and between Wells Fargo Bank, Minnesota, N.A., or it's agent, (herein the "Bank") and MCIT (herein "Participant").

Whereas, the Bank, has established a Securities Lending Program to permit its retirement plan, trust and custody clients to loan securities;

Whereas, under the Securities Lending Program, the Bank, as Agent for the Participant, will make available to selected brokerage firms and other borrowing organizations (Borrower) use of the Participant's securities; and

Whereas, the Bank has other Participants in the Securities Lending Program and the Securities Lending Program is designed to allocate securities loans equitably among the Participants;

Now, therefore, the parties hereto agree as follows:

1. **Appointment**
Participant has appointed Bank under other agreements as custodian of certain assets (herein "Account"). Such agreements authorize Participant to appoint an agent to lend securities from the Account. Participant hereby appoints Wells Fargo Bank Minnesota, N.A. as Agent for the purpose of lending securities from its Account under the Wells Fargo Securities Lending Program.

2. **Agent's Activities**
As Agent for the Participant, the Bank undertakes the following:

    a. To enter into a Borrower Securities Loan Agreement with each Borrower setting forth the general terms governing loans made under the Securities Lending Program. Such Borrower Securities Loan Agreements are available to Participants upon request. A list of Borrowers shall be provided from time to time to Participants or will be furnished upon request.

1

# EXHIBIT D

b. Subject to the Borrower Securities Loan Agreements, each loan made will be made on behalf of and solely for the benefit of the Participant's Account. For accounts subject to ERISA, to the best of Agent's knowledge loans will be made only to Borrowers which do not have any discretionary authority or control with respect to investment of the plan assets involved in the transaction and which do not render investment advice with respect to those assets. For purposes of this paragraph, the term "Borrower" includes any affiliate of a Borrower.

c. To negotiate loans directly or through a finder for a minimum of one day but with no fixed maximum term, retaining the power to terminate the loan at any time unless otherwise agreed with the Participant.

d. To require each loan when made to be collateralized in the amount of 102% of the market value of the loaned security and accrued interest.

e. To mark each loaned security to market daily using the closing valuation as of the prior business day. Agent shall use a pricing service to obtain market valuation. If the market value of the given collateral falls to 100% of the loaned security market value, Agent shall request additional collateral to bring the collateralization back to 102%. Collateral in excess of 102% will be returned to the Borrower if requested.

f. To receive and take possession of collateral in the form of U.S. Government Securities, letters of credit, or cash. Cash received from all loans from Accounts will be commingled for investment purposes. Such cash shall be invested in repurchase agreements, master notes (VPN), U.S. treasuries and agencies, U.S or Euro dollar certificates of deposit and time deposits, bankers acceptances, commercial paper, and other short term money market instruments, and mutual funds holding any of the previously mentioned securities and subject to policy and standard guidelines established from time to time by the Bank. The prime considerations for the investment portfolio shall be safety of principal and liquidity requirements.

g. Normally securities loaned and corresponding collateral transferred (cash or U.S. Government Securities) will be processed, similar to security purchases and sales, through the Depository Trust Company, a Federal Reserve Bank, or any other clearing organization (Clearing Organization).

3. *Allocation of Security Loans among Participants*

The Participant's securities available for lending are listed in the Securities Lending Omnibus Account as part of the lending inventory. The Bank will use reasonable efforts to allocate loans on a security by security queue basis. As a result of the queue, Participant understands that a single Borrower may be lent a significant portion, or all, of Participant's securities available for lending.

4.  *Termination of Any Security Loan*

A loan may be terminated by the Bank or the Borrower at any time pursuant to the Borrower Securities Loan Agreement covering the loan. Unless otherwise agreed to, Participant may request the Bank to terminate any loan of securities for any reason at any time. Upon such loan termination, the Bank will take delivery or receive through a Clearing Organization the securities to be returned. The Bank will return to the Borrower directly or through the Clearing Organization the collateral securing the loan. Borrower Securities Loan Agreements provide for return of corporate securities not later than the third business day following loan termination notice and in the case of government securities not later than the next business day following loan termination notice. Notwithstanding the foregoing, Bank will have a reasonable time after receiving Participant's request to terminate any loan to liquidate cash collateral investments prior to terminating the loan.

5.  *Portfolio Investment Activity and Corporate Actions In Regard to Loaned Securities*

A Participant Account is entitled to all cash dividends, stock dividends, stock splits, rights of distribution, conversion privileges, tender and exchange offers, and similar corporate actions with respect to any loaned securities as if the securities had not been loaned. During any period when securities are loaned, the Participant waives its right to vote such securities. Participant may regain right to vote securities by causing a timely termination of a loan in advance of the record date established for determining stockholder entitlement to vote. Any securities of the portfolio that are on loan may be sold by the Participant's investment manager or fiduciary at any time. The Bank must receive notice on trade date from the proper party advising the Bank of any sale. Upon such notice, the Bank will initiate action to terminate the loan of the securities sold. If such notice is not received by the Bank, the Bank assumes no liability for the failure of the transaction to settle on contractual settlement date.

6.  *Recordkeeping and Reporting*

The Bank will keep security loan records separate from a Participant's custodial or fiduciary portfolio records. Income from each loan will be credited to a Participant's Account once a month. The Participant shall receive a detailed report monthly which shall include all loan activity, Borrowers to whom loans were made and income earned.

7.  *Fees*

Income from the Securities Lending Program is generated by fees paid by the Borrowers and income from investment of cash collateral. All cash collateral is pooled for investment purposes. In acting as Agent for the Participant, the Bank will receive 40% on the net earnings from each loan and the Participant will receive 60%. The fees will be calculated monthly and the Bank's fee will be withheld from the remittance to the Participant or the Account.

8.  *Risk of Loss*

Participant assumes all risk of loss arising out of Borrower defaults on return of lent securities, collateral deficiencies or collateral investment loss. If the borrower defaults on return, as provided in the Borrower Securities Loan Agreement, of a lent security, the Participant or Bank, if authorized, may purchase securities identical to the borrowed securities

3

(or their equivalent in the event of reorganization, recapitalization or merger of the issuer of the borrowed security) and may apply the collateral to the payment of the purchase price, expenses and other obligations under the Borrower Securities Loan Agreement. The Bank assumes the risk of loss arising from negligent and fraudulent operation of its Securities Lending Program.

9. *Termination*
This Agreement may be terminated at any time by either Participant or the Bank upon 60 days written notice to the other. Upon delivery of such notice and upon mutual agreement, either party may waive all or part of the Notice period and the Bank will terminate loans from Participant's Account in accordance with Borrower Security Loan Agreements.

10. *Notices*
Notice to Participant shall be directed and mailed as follows:
   Minnesota Counties Insurance Trust
   Attention: Mary Frank, Finance Manager
   100 Empire Drive, Suite 100
   St. Paul, MN 55103-1885

Notice to the Agent shall be directed and mailed as follows:
   Wells Fargo Bank Minnesota N.A.
   Institutional Investments, Securities Lending
   Sixth Street and Marquette Avenue
   Minneapolis, MN 55479
   ATTN: Robert G. Smith, Senior Managing Director

11. *Section Headings*
The headings of sections in this Agreement are inserted for convenience of reference and shall not be deemed to be a part of or used in the construction of this Agreement.

12. *Governing Law*
This Agreement and all transactions hereunder shall be governed by, interpreted, construed and enforced in accordance with the laws of the State of Minnesota.

13. *Successors and Assigns*
This Agreement shall be binding on the successors and assigns of the parties.

14. *Effective Date*
This Securities Lending Agreement shall be effective on the 13th day of February, 2004.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

## PARTICIPANT

**Minnesota Counties Insurance Trust**

By _/s/ S. E. Sherstad_
Skip Sherstad, Board Chairperson

Attest _/s/ Robyn Sykes_
Robyn Sykes, Executive Director

Approved as to form and execution _/s/ Karen Clayton Ebert_
MCIT counsel

**AGENT**

WELLS FARGO BANK MINNESOTA, N.A.

By _/s/ Mary Porter_

Its VICE PRESIDENT

5